The final case for argument today is Shilling v. County of San Diego. Yes, yes. Mr. Gorski, I think, again, as I mentioned at the first argument, if you want to save time for rebuttal, please watch the clock. Thank you, Your Honor. Yes, I will. Good morning, Your Honors, and may it please the Court. My name is Gary Gorski, and I represent the appellant, Mr. Shilling, in this case. And from the start, I think this case is relatively simple and straightforward. First of all, we have a Rule 8 issue on the initial pleading. We submit that that pleading on its face provided a cognizable claim under the First Amendment for penalizing Mr. Shilling's right to associate freely. The lower court used the wrong legal lens and framed it as an association issue, when in actuality, the word penalize was used twice in the first cause of action, spelling out that he's being penalized for association, not that he was being prevented from association. And if I can direct the Court to the record on that, it would be at ER 38, paragraph 34 of the first claim for relief states that individuals cannot be penalized for their association. Paragraph 35 says the freedom of association, penalizing him for his lawful association. Then on ER 39, which is the complaint, paragraph 36, it states the cognizable claim for damages. Plaintiff has suffered an injury in fact. That injury in fact was a revocation of his CCW. The letter of revocation was identified in the complaint at ER 36. At paragraph 22, after Bruin, the sheriff issued a policy that association with the bruised fighters is good cause to have your CCW revoked. And context is important here, your honors. When Mr. Schilling was first issued a CCW, it was like within four or five days after Bruin, the sheriff at that time issued a policy, shall issue, and he obtained a CCW. An election happens, a new sheriff comes into town, changes the policy and says, well, we're going to look at your associations, which was not the prior sheriff's policy. And I think that's important because that rolls into 11th Amendment immunity, which the lower court was looking at the function of just issuing a CCW, not how the state's involvement in the issue of CCWs and policies regarding that issuance are affected. And so, we submit that, had the lower court followed the cone factors, it's easy to determine that this was strictly a local policy that had no state control, that had no state funding for it. The policy statement of the San Diego Sheriff's Department is the Department of Justice and San Diego County Sheriff's Department are both involved in the issuance of CCWs. It's not saying state only, it's saying the county's involved in this. I think that's important because when they change their policy, which is SCR-5, you'll notice under the application process that they talk about this company. It's an online company for CCWs and it's called Permitium. And that is a local contract with a company, not a third-party contractor, to process CCW applications. That's not a state agency. It's not a state contract. It's a local contract with a vendor. Can I ask you about this? On the mootness question, the statute has been amended, correct? Correct. So are you still asking for an injunction against the old statute? There was no request for an injunction. We were not challenging the statute on its face. We were challenging the way it was applied by the county of San Diego. Yes, Your Honor. Got it. And the second thing is we're also seeking monetary damages and also the stigma because on a CCW application, one of the questions they ask you is, have you ever had a CCW before? And by checking yes and it was revoked, that's a stigma that follows him in any state. And the irony of this, too, and I'm kind of getting off base here, but the irony is people from outside the state of California can go to any county out of the 58 and apply for a CCW, okay? Most people go to Riverside County because it's the fastest processing time. It's kind of like just obtaining a driver's license in Riverside. Mr. Schilling can't even do that. He's stuck with San Diego County and he did reapply and it was rejected because of his prior revocation. So he has an ongoing injury here as well. So he applied under the new regime and was rejected? Yes, Your Honor. And that's not in the record yet, correct? No, that is not in the record. It was in my brief. I pointed that out just in case the court — And the reason given, though, Your Proffers, the reason given was because of the prior revocation? I'm sorry, Your Honor? The reason given for rejecting the new application was because of the prior revocation? Correct, Your Honor. Because of his association with the Boost Fighters. Still because of the association or just because of the prior revocation? I mean, I understand the prior — I guess I'm just trying to — the new denial, did it refer to his association? It did not refer to anything. Just the prior revocation. Yes, Your Honor. Okay. And — On your free association claim, is there any cases that show what are the elements of that type of claim are? For the First Amendment? Yes, for your free association claim. I think First Choice lays that out clearly because one of the issues they point out in there, it's being punished for association. They cite some cases in that decision, but in the general context, First Choice lays out that once the association is the target of the governmental action, it gives Article III standing because even in that case, it was only a subpoena being issued. It wasn't even being enforced or anything yet. But here you have a concrete injury in fact, the actual revocation of a CCW, which is taking away a Second Amendment right. There's no point of having a firearm in your house if you can't take it outside the house and protect yourself. So we're talking about a fundamental right here, so it's much higher than the issue of First Choice, which was a subpoena just being issued. And one of the key issues of this case also is that the policy was never state directed. The Attorney General's Office always issues opinions on matters of enforcement, gang enforcement. There's no general policy statement or memorandum to all 58 sheriffs saying that the booze fighters are an organization that has criminal propensity and that anyone belonging to that association should be denied a CCW. And I'd like to reserve the rest of my time for rebuttal. Thank you, Your Honor. Thank you, Mr. Stotland, whenever you're ready. Good morning, and may it please the court. I am Deputy County Counsel David Stotland, appearing on behalf of the appellees here, the county and the sheriff. And I'd like to start by saying something that also is not in the record, which is it is my understanding that approximately a month ago, Mr. Schilling has been issued a CCW permit by the sheriff's department. With that in mind, I think the biggest question before the court today is whether or not the state has involved itself enough in the CCW process that when the sheriffs are processing these, the sheriff, the state is essentially the main policymaker rather than the sheriff. And I think in looking at that under the McMillan test, we look at the function or issue. Yeah, but does McMillan survive Cone? McMillan is a totally separate piece of analysis from Cone. As I think the concurrence, Judge Bumate, that you and Judge Sung, the concurring and dissenting opinion points out, when we're looking at whether or not how to treat a state created entity, it's either an arm of the state for 11th Amendment purposes, in which case it's all or nothing. Correct. Or it's a municipality. And I'll point out that no matter how well researched all of the opinions in Cone are, they don't even mention McMillan. And because McMillan looks at a different phase, what if you're dealing with a municipality? What if you're dealing with, in McMillan, it was a county sheriff's department? And when you're dealing with a municipality, whether it's as 11th Amendment or who's the policymaker for 1983 purposes, what you're looking at is whether or not the state, it is essentially the state policy that is being implemented. And in this case, and I think when figuring that out, one thing you look at is what's the appropriate level of generality you look at this for. And I would submit that the proper level of generality is CCW licensure. But before you get there, so why, I just don't understand why Cone would not apply. You're suggesting that that's limited to what? I'm saying Cone determines whether something is an arm of the state.  And if it's an arm of the state, in whatever it does, it gets 11th Amendment immunity. Yes. Cone does not apply to municipalities. Why not? Or alternatively, you could say municipalities are not arms of the state under its 11th Amendment analysis. I also don't understand how Cone, an Enbank Ninth Circuit case, could overturn McMillan, a U.S. Supreme Court case. And so I think the right way to square that is- is that 11th Amendment immunity doctrine has changed in the Supreme Court tremendously before- since we've last visited that. That's why we had to take it en banc to overrule our past precedent, which is based off of the older Supreme Court precedent. That is true. But it also did not determine who is a policymaker for 1983 purposes as well. And McMillan is primarily a policy for 1983 purposes type of case. Some of the courts that have interpreted it, SCOCA, for instance, talks about it in 11th Amendment terms. But it is also true that the state- that if the state is the policymaker, the local government under McMillan is not. The local government and the local government officials are not the proper defendants. But OK, so that- I mean, that does not pose the biggest problem, is that you're talking about 1983, not sovereign immunity. They're very intertwined because if this- One's statutory, one's constitutional. I don't know why they would be intertwined. Because if 1983 were amended to allow states to be sued under it, it would run into the buzzsaw of 11th Amendment immunity because the states would- because Congress can't simply by statute say states, you're subject to federal judgments. But what- but when a local government is acting as part of the state and when the state's actions are so pervasive, when the state's involvement is so pervasive that the local government is essentially acting as a part of the state, then the state is the policymaker, not the local government. And I think this court has all sorts of precedents to support that, many of which involve sheriffs. I'd point out this court's decision in Brewster, again, also not discussed in the Cone case. When this court decided Brewster, it said that for general law enforcement purposes, but not for all purposes, sheriffs are considered to be local officials. It distinguished Weiner v. County of San Diego where district attorneys were considered state officials for their general law enforcement functions. But in doing so, it said it was something of a close case. It was one- more or less one factor that weighed- that led to the difference. Here you have not just general law enforcement. You have a very specific state statute that goes even down to the detail of in 26-160, you will pass a policy that states what this state law says. And when the state tells you what- He just alleges that it was a change in sheriff that required- that changed the CCA-CCW status. So it doesn't sound like that's state-enforced. It depends on the personnel who's enforcing it, correct? No, Your Honor. It's because it's state-mandated. Well, but one sheriff found that it wasn't mandated in this case, and another sheriff did. So therefore, it doesn't seem like state policy governs this. Was there a change in state law that required this? The state statute says what the state statute did- what the state statute does. Whether an individual sheriff interprets it one way or interprets it another way and whether the state decides to take action to enforce the implementation that it likes doesn't change the fact that the state mandates it. And the level of generality is not down to- It sounds like you're making the same argument from before. It's like any time the state passes a law and entities have to follow it, they become a function of the state. No. That can't be right. I very much do not agree with that because the state regulates everything in California. Correct. Exactly. So pointing to a statute doesn't really help prove that you're an arm of the state. What I will point to is your precedent that talks- your precedent and the Supreme Court precedent in McMillan that talks about the need to balance and look at how pervasive the state law is. If I understand your argument correctly, I just want to make sure I'm understanding it correctly.  Even if you're saying the entity of the county of San Diego or the sheriff's department was not an arm of the state. In this instance, the sheriff was acting as an officer of the state in implementing state law. Is that your- is that a fair way to characterize your argument? That is. And that's consistent with the outcome this court reached in the Buffett case where the sheriff was simply implementing state law when enforcing the bail schedule mandated by the state. If that's the case, there wouldn't- I think there would still be a claim for injunctive relief that that would not affect. Is that correct? If the injunctive relief claim were not moot, then that's correct because I would think that would still be subject to ex parte young- because that would be sort of an ex parte young style exception. So yes, I agree. If there was a basis for an injunction, which between the legislation changing, the CCW expiring, and Mr. Schilling having a new CCW license from the sheriff, I don't think he can show that this is- Couldn't we still- couldn't the district court still order expungement of the prior revocation? Could the district court technically order expungement of the prior revocation? Yes. Okay, so how does that not make this case moot? Not moot. So the authority cited for expungement of the prior revocation is this court's decision in comprehensive testing. And comprehensive testing was a criminal case involving federal rule of criminal procedure 41 where the government seems to have misled people- misled the magistrate when obtaining a warrant and then did not comply with the restrictions on the warrant about what documents it took, kept, and used. And in that case, this court said you can order the government to destroy its records. If this court was saying- it is quite a stretch to say here where there's no allegation that the government came up by any evidence unlawfully and where the evidence is all over the public record in Mr. Schilling's- in this case here, it's hard to see what meaningful relief expunging the prior revocation would accomplish. Well, it would remove it as a basis to deny him in the future. Except it doesn't seem like that's- except since he has a CCW, that's not necessary. But, I mean, we just don't know what happens in the future, right? Or what if he moves to another state or another county? They could see that it was revoked and then deny him based off of that, correct? That's hard- that's hard to imagine, considering that he subsequently obtained one from the same entity that revoked it. Yeah, but, I mean, our standard for mootness is pretty high. We have to say you have to be absolutely certain that no relief can be granted. But the standard is- the standard's high, but it is a standard. There has to be some actual demonstrable injury. And if he has a CCW, it's hard for him to demonstrate he really has an actual injury from a revocation when he- when the same entity later granted it to him. But this kind of dovetails with the problem with the statute of being very vague and ambiguous of dangerous propensity. So another county might say, since the state didn't define what that means and local sheriffs can determine what that means, maybe another local sheriff will say, well, dangerous propensity means it was revoked at one point. Sure, it was granted later, but you know what? That's a potential dangerous propensity, and I'm going to deny it. I think the phrasing of the statute on some levels is the state trying to have it a little bit both ways. And what I mean by that is the state is saying there's dangerousness, and here's some factors for dangerousness, and there's a little bit of wiggle room that is not quite as broad as good moral character and puts the burden on the state or the local government. But the definitions of terms are in a state statute for a license that's supposed to apply throughout California. So the idea that that is supposed to be something defined at the local level under the state structure doesn't seem to make a lot of sense. It seems to me that this is a state standard that's supposed to be the same whether you're in San Diego or whether you're in Shasta. Based on the language in the state statute, they're making it applicable throughout California. They're trying to state a unified, a uniform approach to how to handle CCW licensing. The state is really trying to say this is a uniform state mandated process. Can I ask a question? I'm a little confused about what the district court did with the qualified sovereign immunity issue with the county because if you read the district court's opinion, it's looking at what the sheriff, whether or not the sheriff is entitled to qualified immunity. I'm sorry, not qualified immunity, sovereign immunity. And then it just says, and so therefore it concludes that she does or I guess he now or anyway, and then conclude and then dismisses the county. There's a, you know, there's an analytical leap there that makes no sense to me because aren't we just supposed to do Monell or something of that nature? I don't believe so. And I don't believe so, again, because you have McMillan and then, and SCOCA, the main decisions that the district court relied on. But those are just about sheriffs, correct? No.  In fact, specifically, SCOCA talks not just about sheriffs. It talks about a county defendant. And it specifically talks about how the county of Santa Clara in that case should not be held liable because CCW licensing is a state, is really a state function. So you're saying that the same analysis that applies to the sheriff applies to the county? Yes. And therefore? Because the sheriff is being sued in her official capacity. She is essentially an official capacity defendant under, you know, Kentucky v. Garner. Like this is essentially a stand-in for the county. And what this case, what SCOCA is saying and what McMillan says is you have to look at whether it's a state. How do we square that before? Because I thought you were saying earlier, you know, that the county is not an arm of the state, but the sheriff was acting as an officer of the state for the specific purpose of this, you know, CCW regime. But then how does that apply to the county? Is the county now an officer of the state? What is going on, I think, Your Honor, is that the state is the policymaker. And so the county is the wrong defendant because it's not the county that's the policymaker. It's the state that's the policymaker. Well, that's irrelevant for the sovereign immunity question. I mean, that's a merits question. It is relevant for, it is relevant. Well, just answer the question. Is the county an arm of the state or not? The county is not an arm of the state. Okay, then what, then how is it entitled to any sovereign immunity? Because the sheriff is implementing a state policy. So then the county is an officer of the state. Because we, I understood that your point was the sheriff is an officer of the state. Yes. And in this case, the county really has no particular role in it. The county is not the policymaker. It is the sheriff implementing the state policy. Then, okay, then that's true. Then it's not entitled to any qualified sovereign immunity. Because if it has no role in implementing CCW, then how is it entitled to any sovereign immunity? Because it's entitled to immunity because it's not the policymaker. The county is being sued because the county is the policy, under allegations that the county is the policymaker. But that's a merits question, though. You're just saying it's not liable. It's not purely a merits question, Your Honor. Because on, because with the pervasiveness of the state legislation covering CCWs, the function of CCWs under McMillan is a state function. And you're saying that the county has no function, relevant function in that. And so, therefore, why would it be entitled to the state's immunity? I'm saying that the county is being sued as the policymaker. And the statutes show that the county is not the policymaker. Right, so maybe you're not liable for any of these things. But I just don't understand how that cloaks you in sovereign immunity. Because when the state is, because when the state is the policymaker, even if it's a county person who's implementing it, because states decide what they're going to have their cities and counties do, and how much discretion to leave to cities and counties. If a state entity, if the state is the policymaker, the county is simply not liable. Yes, okay. But that's a separate question. But you have to get to me how the county is now immune. Because the statutes make clear that in the area of, when it comes to CCW licensing, the sheriff is implementing state policies. And so if you can look at the statutes and say, the sheriff is implementing state policies, then it's not the county policy. And it is obvious on the face of the complaint, and the face of the laws out there, that the county is not the policymaker. Again, this is what this court led to in Buffen, when it found that the sheriff there was not, that the sheriff and the county were not, the sheriff was not responsible for the bail schedule. And so, because the sheriff was implementing a state policy. And so why the sheriff's employer, the county, would be liable when the sheriff's implementing a state policy, rather than the county policy, when that is evident in the complaint, and evident in the state of the case law, and evidence in the state of the statutory law. That's the problem. As for mootness, again, with no, with, I think the court has heard what it needs to hear about mootness. As for opportunities to amend or add the state as the defendant, I certainly agree the state would have been the right defendant in the first place. But the district court really, but the district court explained that, yes, there's 11th Amendment immunity. And I also want to point out that standing and mootness apply at pretty much every step, apply it every step of the procedure, no matter what happens before or after, throughout the proceedings, it has to be an active cause of action. And when the district court denied the motion to reconsider, Mr. Schilling's license had expired. There had not been any reapplication. And that was moot. If Mr. Schilling has complaints about how things were implemented after SB2, and it sounds like he may, but if he has complaints about how things were implemented after SB2, it seems to me those are things that belong in the complaint. So the court can actually adjudicate those matters. Those were not in the complaint here, and they were not in front of the district court because they were not in the complaint. So the district court was right to dismiss this complaint and was right to deny leave to amend this complaint. It sounds like Mr. Schilling may have a complaint about other stuff. And if he has a complaint about other stuff, he should file that complaint and allow the courts to consider that complaint. Because right now we're dealing with him saying he was denied, him saying he was denied for a particular reason, me saying that he has a license and we don't have any accurate record of all of that to look at. That is better brought up within the context of Mr. Schilling filing a complaint addressing his post SB2 issues rather than this complaint addressing his pre SB2 issues when that license expired and that law has been changed.  Thank you. If there's more questions, I'll submit. Great. Thank you. Thank you. Addressing the cone factors as applicable to this case, going to ask for three things, who owns the policy, who controls the policy and who pays for that policy. And all three of those questions point to the County of San Diego and the sheriff, not the state of California. The state of California had no involvement whatsoever in this policy. Did not tell the Sacramento or San Diego County Sheriff's Department to implement this policy. There was no directive for the policy and therefore they had no control over the policy. And likewise, if there was a judgment in this case, the state of California is not going to pay for that policy. The County of San Diego will have to pay for it in their budget. And that brings up another point. The sheriff submits budgets. And in those budgets, they have processing for CCW administrative tasks. That's not the state of California funding their application process. They're doing it and they're using an online vendor for that, not the state of California's vendor. So you have 58 counties with 58 elected officials, 58 budgets and 58 individual sheriffs. All deciding who gets a CCW based on what they perceive or what they think, not what the state mandates. As for mootness, first of all, there's damages in this case, whether it's nominal damages or not. There's still at least $1 in damages, right? Because the policy caused the harm. The harm was he lost his Second Amendment right. Second thing is, his name is now in a database for revoked CCWs that's reported to the Department of Justice. So all revocations are reported to the state. So it's not merely a county issue anymore. That permeates into an official record and you can just follow the dominoes on that. So he applies in Delaware or Kansas, that's going to come up. When you say DOJ, is that state DOJ or federal DOJ? State DOJ. How would Maryland find out? Yes, they would have access to that because it would be in a NICSIS system. I see. And I was not aware that Mr. Schilling received a CCW in the last 30 days. But when we filed the briefs and I put a little, basically, a note in there that he did apply. He has to wait one year every time he gets a rejection letter. So I think this is 24. So now it makes sense that he probably reapplied again. And so it would have been issued. But there's a one-year delay when he can reapply. So that's another damage he sustained. And what's going to happen with a, there's declaratory relief being requested in here. What's going to happen when a new sheriff comes in in the next election? I mean, it's like a ping-pong. It's similar to what happened in Bruin when the state of New York kept on passing laws against, when a city was issuing gun permits and they were getting sued. So the state of New York stepped in and interfered with that. And some of the justices were upset because the state of New York was playing games with standing. And I think that's what's happening here as well because the policy is not changing. The fact that they gave him a CCW is not going to stop a future harm. There has to be an injunction on what happened here, which is a classification of a group and saying you're dangerous, therefore we can revoke your rights. And if we follow the logic of that, what's to stop the county of San Diego from saying, well, anyone with a bar license could be dangerous because you know what? They're driving to court fast. They're making arguments that are dangerous to the public. So you know what? We find attorneys dangerous, so anyone with a bar license, you're not getting a CCW either. I mean, you can see the slippery slope on this. And the policy behind all of this is 1983 is getting watered down. When's it going to stop? Because more and more you're seeing it permeate into every single defense, whether it's jail mail, a brutality of jails. Oh, it's the state. We have immunity. And it's a slippery slope is what's happening here in a dilution of 1983. And on that, we'll submit. Thank you, Your Honors. Great. Thank you both for the helpful argument. The case is submitted, and we are adjourned for the day. All rise.
judges: LEE, BUMATAY, SUNG